UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| MÉNDEZ INTERNET MANAGEMENT SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BANCO SANTANDER DE PUERTO RICO, et al.,<br><br>Defendants. | Civil No. 08-2140 (JAF) |

**OPINION AND ORDER**

Plaintiffs, Méndez Internet Management Services, Inc. ("MIMS") and its president James Méndez, bring this action against Defendants, Banco Santander de Puerto Rico ("BSPR"), Banco Popular de Puerto Rico ("BPPR"), Doral Bank ("DB"), RG Premier Bank of Puerto Rico ("RG"), Westernbank of Puerto Rico ("WPR"), Gilberto Arvelo, and DrShoper.com. Docket No. 4. Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, the Sherman Act, 15 U.S.C. § 1, the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972, and Puerto Rico law. Id. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 25. Plaintiffs oppose, Docket No. 37, and Defendants reply, Docket No. 42.

Civil No. 08-2140 (JAF)                                                    -2-

# I.

## **Factual and Procedural History**

Unless otherwise noted, we derive the following factual summary from the complaint, Docket No. 4. As we must, we assume Plaintiffs' factual allegations to be true and make all reasonable inferences in their favor. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

MIMS is a Puerto Rico corporation, and Méndez is its president and owner. BSPR, BPPR, DB, RG, and WPR ("the Financial Institution Defendants") are Puerto Rico corporations in the banking business. DrShoper.com is a corporate entity that maintains a website, operated by Arvelo, dedicated to profiling businesses.

MIMS trades in dinars, the official currency of Iraq. Dinars can be validly traded in internet commerce, and have no monetary value outside of Iraq. Dinar traders are required to register their businesses with the United States Department of Treasury. Traders also must be licensed by the original source of the dinars.

Federal regulations define money service businesses ("MSBs") as non-bank financial institutions that provide a range of services to consumers. 31 C.F.R. § 103.11(uu). MSBs include entities that buy or sell currency in amounts greater than $1,000 to any other person in one day. MIMS is not technically an MSB, but has been treated as one by the Financial Institution Defendants.

Civil No. 08-2140 (JAF)                                                      -3-

As a part of his effort to market dinars, Méndez opened or attempted to open several commercial bank accounts with various financial institutions, including the Financial Institution Defendants. Between September 11, 2007, and August 8, 2008, the Financial Institution Defendants either closed Méndez' accounts or refused to allow him to open new accounts. BPPR required Méndez to cancel his account because "they did not want that type of account." DB closed Méndez' account because "it did not want to engage in business with foreign currency traders." RG cited administrative reasons for closing Méndez' account. BSPR stated that it was closing Méndez' accounts because of the high volume of transactions occurring on the account. WPR closed Méndez' account for administrative reasons, but a bank official cited "a change in policy to discontinue service to [MSBs]." The Financial Institution Defendants notified Plaintiffs of these closures and denials through the internet, mail, or telephone. Other financial institutions have also refused to open accounts for Méndez and/or have closed his accounts because they do not wish to serve MSBs and they believe MIMS to be an MSB.

Arvelo, through public appearances, publications, and his website DrShoper.com, has campaigned against the sale of dinars in Puerto Rico. He published several statements on DrShoper.com that Plaintiffs allege to be misrepresentations, including the suggestions that Plaintiffs do not comply with government regulations, that the sale of dinars is not legal, that the sale of dinars was among twelve

Civil No. 08-2140 (JAF)                                                    -4-

dubious reputation schemes in place in Puerto Rico and that victims of these schemes should file complaints with the Federal Trade Commission, and that all dinar sales operations take orders for dinars but do not fill them. Plaintiffs provide dates for these alleged misrepresentations but do not provide actual quotations from the website.

Plaintiffs allege that Defendants have forged a de-facto conspiracy through the misrepresentations published by Arvelo and the Financial Institution Defendants' refusal to do business with Plaintiffs. They maintain that the conspiracy was motivated by the goal of preventing Plaintiffs from selling dinars in Puerto Rico, because Defendants allegedly seek to reserve or monopolize the dinar market.

On October 9, 2008, Plaintiffs filed the instant complaint in federal district court, charging Defendants with violating RICO, the Sherman Act, the BHCA, and Puerto Rico defamation law. Docket No. 4. Defendants jointly moved to dismiss on December 15, 2008. Docket Nos. 25, 26, 27, 28, 29, 30, 31, 32, 35. Plaintiffs opposed on January 16, 2008, Docket No. 37, and Defendants jointly replied on January 20, 2009, Docket Nos. 42, 43, 44, 45, 46, 49, 50, 51, 52.

## II.

### Standard Under Rule 12(b)(6)

A defendant may move to dismiss an action against him, based solely on the complaint, for the plaintiff's "failure to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing this motion, we "accept[] all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that directly or inferentially support each material element of some legal claim. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). Typically, "specific facts are not necessary; the statements need only 'give the defendants fair notice of [the claim] and the grounds upon which it rests.'" Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89 (2007)). However, if the plaintiff alleges fraud or mistake, he "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### III.

### Analysis

Defendants argue that we must dismiss Plaintiffs' complaint for failure to state a claim under RICO, the Sherman Act or the BHCA. Docket No. 25. They also ask us to decline to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico claims. Id. We address these issues in turn.

**A. RICO**

Defendants contend that Plaintiffs have failed to state a claim under RICO because, inter alia, they have failed to allege that Defendants engaged in predicate acts to establish a pattern of racketeering activity. Docket No. 25.

RICO renders it unlawful for any person associated with an enterprise affecting interstate commerce to engage in "a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim, a plaintiff must show "(1) conduct (2) of an enterprise, (3) through a pattern of (4) racketeering activity." Soto-Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003) (citing N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001)). To allege a pattern of racketeering activity, the plaintiff must allege at least two predicate acts defined as violations of specified federal laws. 18 U.S.C. § 1961; Ahmed v. Rosenblatt, 118 F.3d 886, 888 (1st Cir. 1997). Plaintiffs here allege that Defendants violated (1) the mail and wire fraud statutes and (2) the Hobbes Act.

**1. Mail and Wire Fraud**

Defendants argue that Plaintiffs have failed to state a claim for mail or wire fraud because Plaintiffs have failed to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Docket No. 25.

To state a claim for mail or wire fraud, a plaintiff must show that the defendant (1) engaged in a scheme to defraud based on false pretenses; (2) knowingly and willing participated in the scheme with the specific intent to defraud; and (3) used interstate mail or wire communications in furtherance of the scheme. 18 U.S.C. §§ 1341, 1343; Sánchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 9-10 (1st Cir. 2007) (citing United States v. Cheal, 389 F.3d 35, 51 (1st Cir. 2004); Pérez v. Volvo Car Corp., 247 F.3d 303, 312-13 (1st Cir. 2001)). Rule 9(b) requires a plaintiff to specifically plead RICO mail and wire fraud. Ahmed, 118 F.3d at 889; New England Data Servs., Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987). Under Rule 9(b), the plaintiff "must state the time, place and content of the alleged mail and wire communications perpetrating that fraud." Ahmed, 118 F.3d at 889 (citing Becher, 829 F.2d at 291).

Plaintiffs allege that the Financial Institution Defendants engaged in a concerted effort to deny it access to banking services by cancelling its existing bank accounts or rejecting its efforts to open new accounts. Docket No. 4. Plaintiffs assert that the Financial Institution Defendants communicated these cancellations or rejections through the mail or by telephone, and that the cancellations or rejections misrepresented Plaintiffs as an MSB. Id. However, Plaintiffs do not detail the dates or precise content of the alleged communications. See id. Therefore, even if Plaintiffs' allegations amount to violations of RICO, Plaintiffs have failed to meet the

pleading requirement of Rule 9(b) with respect to the Financial Institution Defendants. See Ahmed, 118 F.3d at 889 ("Failure to plead predicate acts adequately is enough to sink [a] RICO claim.").

With respect to the statements made on DrShoper.com, Plaintiffs stated the dates and methods of communication of the alleged misrepresentations. See Docket No. 4. However, they did not plead the exact contents of the representations, instead including only summaries. See id. There is no excuse for Plaintiffs' failure to allege these facts, as Arvelo's statements were published on DrShoper.com and readily accessible. Cf. Becher, 829 F.2d 286, 290 (stating that "[i]n an appropriate case, where . . . the specific information as to [the communications] is likely in the exclusive control of the defendant," courts may grant further discovery and allow plaintiff to amend complaint). We, therefore, find that Plaintiffs have failed to adequately plead mail or wire fraud against either the Financial Institution Defendants or against Arvelo and DrShoper.com.

### 2. **Extortion under the Hobbs Act**

Defendants assert that we must dismiss Plaintiffs' RICO claims predicated on extortion under the Hobbs Act because Plaintiffs do not allege that Defendants obtained anything from Plaintiffs. Docket No. 25. The Hobbs Act "outlaws extortion or attempted extortion affecting interstate commerce," Sánchez, 492 F.3d at 12, and defines extortion as obtaining property "from another, with his consent,

induced by the wrongful use of force, violence, fear, or under color of official right," 18 U.S.C. § 1951(b)(2). The element of "obtaining" property requires a transfer of property from the plaintiff to the defendant. Scheidler v. Nat'l Org. of Women, 537 U.S. 393, 403 (2003). Thus, even if a defendant interferes with a plaintiff's property rights, he cannot be held liable for extortion unless he receives something of value from the plaintiff. Id. at 404-05. Plaintiffs argue that Defendants extorted by interfering with Méndez' license to establish a dinar sales outlet in Puerto Rico. Docket No. 37. However, because Plaintiffs do not assert that Defendants actually acquired Méndez' license to distribute dinars in Puerto Rico, we find that Plaintiffs have not stated a claim for extortion under the Hobbs Act. See Scheidler, 537 U.S. at 404-05.

As Plaintiffs have not alleged facts demonstrating that Defendants committed mail or wire fraud or extortion, we dismiss Plaintiffs' RICO claim.

**B.   Sherman Act**

Plaintiffs assert that, between September 11, 2007, and August 8, 2008, the Financial Institution Defendants either closed Méndez' accounts or refused to allow him to open new accounts. Docket No. 4. The Financial Institution Defendants either did not give reasons or gave pretextual reasons for these closures or denials. Id. Plaintiffs also allege that these closures and denials constituted "concerted action" and were part of a "group boycott" of

Plaintiffs' business, because Defendants were attempting to reserve or monopolize the dinar market in Puerto Rico. Id. Defendants contend that Plaintiffs have failed to state a claim under the Sherman Act because they have not sufficiently alleged the existence of an agreement or conspiracy between Defendants. Docket No. 25.

Section One of the Sherman Act prohibits "every contract, combination . . . or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To meet the pleading requirement of Rule 8(a)(2), a § 1 plaintiff must allege facts suggesting the existence of an agreement between the alleged co-conspirators. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). The plaintiff must do more than allege parallel conduct and baldly assert the existence of a conspiracy. Id. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." Id. at 556-57.

Plaintiffs' complaint contains only bare allegations of an agreement among Defendants, with no information as to how, when, and where the Defendants came to the alleged agreement. Plaintiffs have essentially pled parallel conduct, with nothing beyond their own conclusory assertions to support the allegation of an anti-competitive agreement. This does not suffice to state a claim for violation of § 1 of the Sherman Act. See Twombly, 550 U.S. at 556-57. Furthermore, we find Plaintiffs' allegations inherently implausible,

since Defendants do not compete with Plaintiffs. Plaintiffs do not currently offer traditional banking services, and so far as we can tell, Defendants do not trade in Iraqi dinars. We, therefore, dismiss Plaintiffs' Sherman Act claim.

**C.   The BHCA**

Plaintiffs argue that Defendants violated the BHCA by tying their provision of banking services to Plaintiffs' ceasing to deal with the MSBs that distribute the dinars that Plaintiffs sell. Docket Nos. 4, 37. Defendants assert that Plaintiffs have failed to state a claim for violation of the BHCA because they have not alleged the existence of an explicit tying arrangement. Docket No. 25.

The BHCA provides that a bank shall not extend credit or vary the consideration of credit, on the condition that the customer shall not obtain some other credit or service from that bank's competitor. 12 U.S.C. § 1972(1). To state a claim under § 1972, a plaintiff must allege that (1) "the bank imposed an anticompetitive tying arrangement;" (2) the arrangement was unusual in the banking industry; and (3) the practice benefitted the bank. Highland Capital, Inc. v. Franklin Nat'l Bank, 350 F.3d 558, 566 (6th Cir. 2003) (citing Kenty v. Bank One, N.A., 92 F.2d 384, 394 (6th Cir. 1996)). To meet the first element, the plaintiff must allege "that a bank conveyed an intention to withhold credit unless the borrower fulfilled a 'prerequisite' of purchasing or furnishing some other

product or service" from the bank or ceasing to do business with the bank's competitor. See id. at 567.

Plaintiffs do not assert that the Financial Institution Defendants conveyed their intention to close the account unless Plaintiffs stopped dealing in dinars. See id. Some of the Financial Institution Defendants gave no reason for the closures, cited administrative reasons, or stated that the closures were due to the high volume of transactions on Méndez' accounts. See Docket No. 4. BPPR stated that it "did not want that type of account"; DB indicated that "it did not want to engage in business with foreign currency traders"; and WPR closed the account citing "a change in policy to discontinue service to [MSBs]." Id. While these statements demonstrate a reluctance to engage in business with Plaintiffs, none of the Financial Institution Defendants told Méndez he could keep his accounts open on the condition that Plaintiffs stop doing business with a particular competitor. Thus, Plaintiffs have not satisfied the first element of a BHCA claim, namely, they have not alleged that any of the Financial Institution Defendants actually imposed a tying arrangement. See Highland Capital, 350 F.3d at 566. We, accordingly, dismiss Plaintiffs' BHCA claim.

**D.   Puerto Rico Claims**

Because we dismiss all federal claims, we decline to exercise supplemental jurisdiction over Plaintiffs' Commonwealth claims. See 28 U.S.C. § 1367(c)(3); Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir.

Civil No. 08-2140 (JAF) -13-

1992) (quoting <u>Cullen v. Mattaliano</u>, 690 F. Supp. 93, 99 (D. Mass. 1988)).

## IV.

### Conclusion

In accordance with the foregoing, we hereby **GRANT** Defendants' motion to dismiss, <u>Docket No. 25</u>, and **DISMISS** all federal claims **WITH PREJUDICE**. We **DISMISS** Plaintiffs' Puerto Rico claims **WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 15th day of May, 2009.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge